**The below described is SIGNED.**

**Dated: May 05, 2006**

            /s/ William T. Thurman
**WILLIAM T. THURMAN**
**U.S. Bankruptcy Judge**

---

# IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF UTAH

## CENTRAL DIVISION

| | |
|---|---|
| In re:<br>**Jay Busch**,<br>    Debtor. | Bankruptcy Case Number<br>05-20724<br>[Chapter 7] |
| Cindy Hancock<br>    Plaintiff,<br>v.<br>Jay Busch,<br>    Defendant. | Adversary Proceeding Number<br>04-2943<br>Judge William T. Thurman |

**MEMORANDUM DECISION GRANTING IN PART
AND DENYING IN PART DEBTOR'S MOTION FOR RELIEF
FROM THE JUDGMENT UNDER RULES 7052 AND 9024**

The history of this case can be confusing to say the least. It encompasses five bankruptcy

cases and appearances before multiple state trial courts, the Utah Court of Appeals, all three of

the district's bankruptcy judges at least once in separate cases, and the 10th Circuit Bankruptcy

Appellate Panel. All told, the parties have appeared in front of at least 10 different judges and one state court domestic law commissioner. Through it all there have been stipulations and stay reliefs, appeals and affirmations, reversals and remands, dismissals and denials of discharges. The Court has made every effort to understand the case and resolve the contested issues.

The present matter before the Court is the Defendant's Motion for Relief Under Rules 7052 and 9024. In his motion, the Defendant makes various arguments for why the Court should amend its judgement from December 29, 2005, in which the Court determined that the Defendant's obligation on the second mortgage of his former marital home was in the nature of support and, therefore, nondischargeable under 11 U.S.C. § 523(a)(5).[1] The Court also ordered the Defendant to pay attorney's fees and costs to the Plaintiff. At a hearing on this Motion held on April 26, 2006, the parties made representations and presented oral arguments. The Court has carefully considered the arguments and evidence. For the reasons discussed below, the Court grants the Defendant's Motion in part and denies it in part.

## I.  FACTUAL BACKGROUND

The Plaintiff and the Defendant were married at some point before 2000. Before the parties divorced, but during a separation, the Defendant incurred substantial debt. When the parties reconciled, they paid off the debt with a second mortgage on the marital home. The parties agreed between themselves that the Defendant would be responsible for the mortgage obligation. The Plaintiff and the Defendant were later divorced on January 14, 2000.

The divorce decree awards the marital home, located at 4045 South Durrans Lane, West Valley City, Utah, to the Plaintiff, subject to a lien of $14,977.50 held by the Defendant payable

---

[1]Statutory references contained herein are to the Bankruptcy Code unless otherwise noted.

if the Plaintiff "remarries, cohabits, sells the home, or when the minor child reaches the age of 18 years." The divorce decree also ordered the Defendant to assume and pay the second mortgage on the marital home.

The Defendant filed his first[2] chapter 13 bankruptcy case on July 28, 2000 ("First Case"), which was assigned to Judge Glen Clark. The Defendant listed the second mortgage on his statements and schedules in the First Case. The Plaintiff filed a proof of claim in the First Case arguing that, among other things, the Defendant's obligation to pay the second mortgage was nondischargeable and deserved priority status in the chapter 13 plan. On March 13, 2001, as part of his ruling at the confirmation hearing, Judge Clark orally ruled that Defendant's obligation to pay the second mortgage and attorney fees of $5,118 were in the nature of support obligations and nondischargeable under § 523(a)(5). No written order on this ruling was issued because the Plaintiff did not prepare a written order for Judge Clark to sign as required by the Court's Local Rules, and because the Defendant voluntarily dismissed the First Case shortly thereafter.

The Defendant filed his second bankruptcy case under chapter 13 on July 3, 2001 ("Second Case"), one day after dismissing the First Case. The Second Case was assigned to Judge Judith Boulden. A new contested matter ensued with the filing of a proof of claim by the Plaintiff seeking relief similar to that requested before Judge Clark in the First Case. The only issue before Judge Boulden was the amount and nature of the Plaintiff's proof of claim. Judge Boulden ruled that Judge Clark's previous rulings in the First Case were res judicata on the issue

---

[2] The Defendant actually had filed a chapter 7 case jointly with the Plaintiff in 1998 and received a discharge therein. Accordingly, the chapter 13 case filed on July 28, 2000 was a subsequent filing in this series of filings made by the Debtor. For convenience of this decision, the July 28, 2000 case is referred to as the first case.

3

and, therefore, the mortgage obligation was in the nature of support. After Judge Boulden's ruling, the Defendant dismissed the Second Case.

On April 29, 2002, the Defendant filed a third bankruptcy case under chapter 13 ("Third Case"), which was assigned to this Court. The Court confirmed the Defendant's chapter 13 plan on February 13, 2003. That plan provided for payment in full of the Plaintiff's priority claim, which included the second mortgage obligation. The amount of the claim was originally $20,401.67, but was later amended by order dated December 9, 2003, and increased to $36,753.33.[3] Through payments to the chapter 13 Trustee, the Defendant paid the Plaintiff $7,109.20 as part of her priority claim, which is reflected in the Final Account of the Trustee in the chapter 13 portion of the Third Case. No other priority claims were to be paid through the chapter 13 plan.

The Defendant voluntarily converted his chapter 13 case to chapter 7 on July 28, 2004. The Defendant recognized that he was not entitled to a discharge due to having received an earlier discharge in a case within six years of filing. Therefore, the Defendant was denied a chapter 7 discharge on March 18, 2005. After the Third Case was converted to chapter 7, the Defendant paid the Plaintiff directly $7,000. The Defendant did not specify what these payments were for, but the Plaintiff accounted them towards the second mortgage obligation.

While the Third Case was still in its chapter 13 status, the stay was lifted to allow litigation in state court. A ruling in state court as to the nature of the second mortgage obligation was appealed to the Utah Court of Appeals. On May 8, 2003, the Utah Court of Appeals held that Judge Clark's unsigned bankruptcy order was insufficient to establish res judicata effect on

---

[3]Although the mortgage obligation was greater than $36,753.33, the priority portion of the claim was limited because of various reasons including the fact of the parties' child turning 18.

the second mortgage. The Court of Appeals arrived at this conclusion by resting on Utah law, which provides that a ruling is not a final judgment for purposes of res judicata until it is memorialized in a signed order. Since Judge Clark did not execute an order before the case was dismissed, the Court of Appeals held that Judge Clark's ruling was not binding for res judicata purposes on the issue of whether the mortgage obligation was in the nature of support. On remand to the state court system, Judge Fratto found that the obligation created by the second mortgage was a debt created by an allocation of marital debt under the principles of equitable distribution.

On November 1, 2004, the Defendant filed the present bankruptcy case under chapter 7 ("Fourth Case"). By a stipulation and order dated March 7, 2005, the present adversary proceeding, although commenced under the Third Case, was deemed to be open and applicable in this Fourth Case. The Plaintiff timely filed the current adversary proceeding seeking a determination of nondischargeability of the mortgage obligation plus attorneys fees and costs.

The Defendant has stipulated in this Fourth Case that Judge Clark's Order awarding $5,118 in fees from the First Case, and Judge Boulden's Order awarding $956.65 in fees from the Second Case are nondischargeable as debts in the nature of support under § 523(a)(5). As part of its October 4, 2005, summary judgment ruling, the Court ordered that the stipulated attorney's fees were nondischargeable. By way of explanation, these fees and costs were incurred seeking enforcement of earlier state court orders requiring the Defendant to pay certain amounts to the Plaintiff, and were either incurred prior to the filing of the First Case or in between the dismissal of the First Case and the filing of the Second Case. It does not appear that they were related to enforcing payments on the second mortgage.

In its October 4, 2005, summary judgment ruling, the Court also held that, pursuant to the Utah Court of Appeals decision, Judge Clark's decision does not have preclusive effect on the current issue of whether the second mortgage is deemed in the nature of support. Accordingly, the Court held that it must rule on the merits of this Fourth Case and "peak behind the covers," so to speak, of the divorce decree to determine whether the mortgage obligation was in the nature of support.

The Court conducted a trial on December 20, 2005, to determine whether the mortgage obligation and attorney's fees surrounding this litigation are in the nature of support under § 523(a)(5). At trial, the Court determined that, based on the evidence presented, the mortgage obligation was in the nature of child support and, therefore, nondischargeable to the extent that it allowed the Defendant's child to remain in the former marital home.

The Court further determined that the $7,000 in direct payments the Defendant made to the Plaintiff on his mortgage obligation after the Third Case was converted to chapter 7 were to be applied to any dischargeable debt owing on the mortgage obligation. The Court's determination of the application of the $7,000 was based on the fact that the Defendant never expressed any indication as to how the payments were to be attributed. The Defendant admitted as much at trial when questioned by Plaintiff's counsel. The Plaintiff chose to treat these as payments on the mortgage obligation, but also did not make an election as between the dischargeable and nondischargeable portions. Accordingly, the Court determined that under Utah law the $7,000 in payments were to be applied first to overdue interest and then to unsecured, dischargeable debt.

The Court determined that there was a maximum of $19,769.68[4] due to the Plaintiff on the second mortgage obligation representing the payments due from the date of divorce up until the 18th birthday of the Defendant's daughter. Adjusting for payments made previously by the chapter 13 Trustee in the Third Case from payments made by the Defendant according to his confirmed plan, the Court ruled that the Defendant owed $12,666.18 to the Plaintiff for the nondischargeable portion of the second mortgage obligation.

Furthermore, the Court awarded the Plaintiff nondischargeable attorneys fees and costs in addition to the $6,085.50 that the parties had already stipulated were nondischargeable. The Court determined that the Plaintiff incurred a total of $37,967.95 in fees and costs in litigating the enforceability of the second mortgage as nondischargeable against the Defendant. Included in this total, were $10,000 in fees and costs associated with the Defendant's appeal taken to the 10th Circuit Bankruptcy Appellate Panel (the "BAP"): an appeal in which the Plaintiff prevailed in part. The Court determined that the Plaintiff was only successful in part of the state court proceedings related to the enforceability of the second mortgage because (1) the Defendant had already paid the Plaintiff $7,109.20 towards the nondischargeable debt at issue, and (2) the Plaintiff was awarded monthly payments—not the entire balance or lump sum as the Plaintiff requested. The Court, therefore, reduced the Plaintiff's award for attorneys fees and costs by half to $18,983.97 and, accordingly, attributed $5,000.00 for the BAP appeal.

The total judgment awarded at trial in favor of the Plaintiff was therefore $31,650.15. It has since come to the Court's attention that its determination that a maximum of $19,769.68 was due to the Plaintiff on the second mortgage obligation was in error. In arriving at that number,

---

[4]As explained below, the Court erred in using this number since the parties had previously stipulated that there was $36,753.33 owing on the second mortgage obligation. The Court, therefore, now adjusts this accordingly.

7

the Court calculated monthly payments on the second mortgage up until the parties' daughter turned 18. However, for reasons not fully explained, the parties stipulated that the amount the Defendant owed on the second mortgage obligation was $36,753.33. This number included the $6,085.50 in fees that the parties stipulated were nondischargeable. Deducting that out, the Court reaches an amount of $30,667.83 owing on the second mortgage obligation, which is the number it should have used as the starting point in determining the total amount to be awarded to the Plaintiff. Therefore, the amount awarded to the Plaintiff for the nondischargeable portion of the second mortgage obligation, after crediting $7,109.20 in payments made by the chapter 13 Trustee, should have been $23,558.63, which should have increased the total judgment awarded to the Plaintiff to $42,542.60.[5] Accordingly, the prior judgment should be modified to reflect this change. The Defendant now requests relief from the judgment under Rules 7052 and 9024.

## II.   JURISDICTION AND VENUE

The Court has jurisdiction over this adversary proceeding under 28 U.S.C. § 157(b)(2)(I). Venue is appropriate in this case under 28 U.S.C. § 1408(1). The Court finds that notice of the hearing is appropriate in all respects.

## III.   ANALYSIS

### A.   Defendant's Motion to Amend under Rule 7052

---

[5]$30,667.83 for the mortgage obligation less $7,109.20 for payments made by the chapter 13 Trustee plus $18,983.97 for attorney's fees and costs.

The Defendant moves the Court to amend its judgment under Federal Rule of Civil Procedure 52(b) as adopted by Fed. R. Bankr. P. 7052. Rule 52(b) states that the Court may, on a party's motion, "amend its findings—or make additional findings—and [the court] may amend the judgment accordingly." The purpose of a Rule 52(b) motion is to "correct manifest errors of law or fact."[6] It is not to relitigate old issues or rehear the merits of a case.[7]

The Defendant has made four arguments in his motion for why he should be granted relief under Rule 52(b): First, the Plaintiff did not present evidence to support the Court's determination that the second mortgage obligation was in the nature of child support. Second, the BAP appeal was unrelated to the nature of the obligation so the Plaintiff was not entitled to attorney's fees expended on this appeal. Third, he was "clearly" the prevailing party in state court litigation so the Court should not have awarded any attorney's fees to the Plaintiff. Fourth, the Court did not properly credit payments the Defendant previously made on the mortgage obligation. The Court will address each of these arguments in turn.

### 1. The Plaintiff Presented Sufficient Evidence to Support the Court's Determination that the Mortgage Obligation Was in the Nature of Support

The Defendant argues both in his motion and his reply brief that the Plaintiff presented no evidence at trial to support the Court's determination that the second mortgage obligation was in the nature of child support. Specifically, the Defendant points to his trial Exhibit D, which is a transcript of arguments made by Plaintiff's counsel in the parties' divorce court proceeding,

---

[6] Lyons v. Jefferson Bank & Trust, 793 F. Supp. 989, 991 (D. Colo. 1992) aff'd in part, rev'd in part on other grounds, 994 F.2d 716 (10th Cir. 1993).

[7] See Fontenot v. Mesa Petroleum Co., 791 F.2d 1207, 1219 (5th Cir. 1986).

9

and to cases like In re Miller[8] to support his argument. This is essentially the same argument the Defendant made at trial. The Court carefully considered this argument and the associated evidence then, and does so now, but again does not find it persuasive. The Plaintiff presented sufficient evidence to support her position that the second mortgage obligation was in the nature of support.[9]

Additionally, the Defendant claims that the Court was wrong in not strictly following the Utah child support guidelines because the divorce court made no findings that special circumstances existed to justify a deviation from them. In support of his argument, Defendant cites to Hill v. Hill.[10] Defendant's argument in this regard is unpersuasive because, as the Court noted at trial, its responsibility in determining whether the mortgage obligation was in the nature of support was to make its own determination from the facts at hand.[11] Sylvester holds that

---

[8] Miller v. Miller (In re Miller), 284 B.R. 734 (10th Cir. B.A.P. 2002).

[9] For example, the Plaintiff offered the following testimony at the hearing on December 20, 2005:

Mr. Tyckson: And so in, going back to Exhibit 2, in order for your budget to be balanced at that time . . . you would either need more alimony or you would have to have more support from Jay, . . . or he would have to pay that obligation, in order for you to balance you budget, is that correct?

Ms. Hancock: That is correct.

. . .

Mr. Tyckson: Was there any way that you could stayed in that house if you did not have this additional support from Jay?

Ms. Hancock: No I could not have.

[10] Hill v. Hill, 841 P.2d 722, 724 (Utah App. 1992) (holding that the trial court's failure to apply the presumptive child support guidelines without making specific findings that special circumstances exited to justify deviation from them was reversible error).

[11] See Sylvester v. Sylvester, 865 F.2d 1164, 1166 (10th Cir. 1989).

whether a debt is in the nature of support is a matter of federal bankruptcy law.[12] It is, therefore, largely immaterial whether the divorce court intended to limit child support so long as the resulting award had the effect of support. For this reason, this Court was also not bound by the state court's determination that this was an allocation of marital debt under the principles of equitable distribution. This issue of collateral estoppel, as discussed in cases like Putvin v. Hill,[13] is not applicable where, as in the present case, the bankruptcy court has the responsibility of determining whether the debt is in the nature of support under § 523(a)(5).

### 2. The BAP Appeal Was Unrelated to the Nature of the Second Mortgage Obligation

The Defendant's second argument for why he should be granted relief, which is also addressed in his reply brief, is that his appeal to the BAP was unrelated to the nature of his obligation on the second mortgage. Therefore, he argues, the Plaintiff should not have been awarded attorney's fees in connection with this appeal. As explained above, the Court awarded $5,000 in attorney's fees to the Plaintiff for this appeal.[14]

The Defendant took his appeal to the BAP seeking to reverse this Court's order terminating the stay to allow some matters to be determined in state court. Specifically, the Plaintiff had requested relief from the stay in order to terminate the Defendant's equity interest in the former marital home. Commissioner Evans with the state court system had previously

---

[12] See id.

[13] Putvin v. Hill, 332 B.R. 619 (10th Cir. B.A.P. 2005).

[14] The Court determined at trial that attorney's fees for an appeal to the BAP should be no greater than $10,000. As explained above, the Court determined that the Plaintiff substantially prevailed in all of the proceedings related to the nature of the mortgage obligation to the extent of approximately 50%. Therefore, the Plaintiff was awarded $5,000 for attorney's fees related to the BAP appeal.

ruled that the Defendant was not entitled to his equity interest until he had satisfied the second mortgage obligation in full.  The Plaintiff has argued that since the Defendant's equity interest was tied directly to his obligation to pay the second mortgage, the appeal to the BAP was related to the nature of the Defendant's obligation.  With the benefit of further clarification from both parties, it is now clear to the Court that this was the case only in the broadest of approaches.  Had the Plaintiff failed in her attempt to lift the stay so as to terminate the Defendant's equity interest in the former marital home, the Defendant would have still been liable on the mortgage obligation.  Furthermore, Commissioner Evans' ruling would have remained in place and the issue of the nature of the Defendant's obligation on the second mortgage would have remained undecided.

The Court awarded attorney's fees for the BAP appeal believing that the Plaintiff's purpose in engaging in litigation with the Defendant was related to the Defendant's obligation to pay the second mortgage.  The Court believed, therefore, that the Plaintiff's efforts to lift the automatic stay, including the defense of her position during the Defendant's appeal to the BAP, were done with the intent of enforcing this obligation.  The arguments made in connection with the Defendant's present motion, however, have clarified that the Plaintiff's attempt to terminate the Defendant's equity interest was unrelated to, and had no affect on, the nature of this obligation.  In order to avoid clear error and/or manifest injustice, therefore, the Court finds that the BAP appeal was unrelated to the nature of the obligation of the second mortgage obligation and amends its decision to deny the Plaintiff attorney's fees for this appeal.  Accordingly, there should be an adjustment downward of $5,000.00, which the Court had attributed to the BAP appeal.

### 3.  Overall, the Plaintiff Was the Prevailing Party in the Related State Court Proceedings

The Defendant's third argument for relief is that he was "clearly" the prevailing party in state court litigation, an argument he made at trial. At trial, the Court carefully examined all of the state court proceedings between the Plaintiff and the Defendant, and allocated the potential prevailing points to each party as appropriate. The Court again has reviewed all of these matters and finds that the Defendant's argument is unpersuasive. The Court determines that the Plaintiff was, overall, the prevailing party in the state court proceedings.

The Defendant further argues in his reply brief that the Court is awarding the Plaintiff a double recovery for attorney's fees. The Defendant argues that the Plaintiff was already awarded attorney's fees by the divorce court prior to the filing of the Defendant's First Case. The Defendant presents no evidence to support this allegation but does point to the April 2000 proceedings in state court to hold the Defendant in contempt for failure to comply with the divorce decree. The Court explained in great detail how it awarded attorney's fees in its ruling of December 29, 2005. As explained, the Court did not award the Plaintiff attorney's fees in connection with the state court contempt proceedings so there is no double recovery in this instance. Nor did the Court award attorney's fees for any other proceeding that would create a risk of a double recovery. Therefore, the Defendant's argument in this regard is unpersuasive.[15]

### 4.  The Defendant's Fourth Argument is No Longer Relevant

---

[15] At trial, the Plaintiff introduced Exhibit 50, which consists of a summary of the fees and costs totaling $119,575.82 that she incurred in litigation with the Defendant. During closing arguments, Plaintiff's counsel redacted this amount and asked the Court for $50,794.99 in fees representing the fees associated with proceedings where the Plaintiff prevailed. The Court pared that down to just under $19,000.

The Defendant's fourth argument for why he should be granted relief under Rule 52(b) relates to the proper credit of payments the Defendant made on the mortgage obligation. At the hearing on this motion, the Defendant's counsel stated that if the Court uses the $36,753.33 figure in calculating the amount owed on the mortgage obligation, this argument becomes irrelevant. As discussed above, the Court has amended its judgment to use the $36,753.33 figure in calculating the amount awarded to the Plaintiff, and, therefore, will not address this argument per counsel's direction.

As stated previously, a Rule 52(b) motion is not to be used to relitigate issues already decided.[16] The Court closely studied the Defendant's evidence and arguments in regards to these issues when they were presented at trial. The Court elected not to adopt them at trial. After again carefully considering them as now argued by the Defendant, the Court declines to alter or amend its judgment as requested with respect to all of the Defendant's arguments except for the Defendant's second argument relating to attorney's fees awarded for the BAP appeal. With respect to this argument, the Court grants the Defendant's Motion and hereby amends its findings to state that the BAP appeal was unrelated to the nature of the mortgage obligation, and the Plaintiff was not entitled to attorney's fees associated with the appeal. As explained above, the Court also amends the decision to use the stipulated amount of $36,753.33 as the starting point for determining the amount owed to the Plaintiff on the second mortgage obligation.

**B.     Motion for Relief under Rule 9024**

---

[16]See Fontenot, 791 F.2d at 1219.

Defendant has also moved for relief from the judgment under Rule 9024 on the basis of surprise. Federal Rule of Bankruptcy Procedure 9024 adopts Federal Rule of Civil Procedure 60(b)(1), which, provides that a party may request relief from a final judgment, order, or proceeding for "mistake, inadvertence, surprise, or excusable neglect." Relief under Rule 60(b) "is extraordinary and may only be granted in exceptional circumstances."[17]

The Defendant is seeking to introduce new evidence into the record on the basis of surprise under Rule 60(b)(1). Specifically, the Defendant desires to reopen the record to introduce a letter from his counsel to the Plaintiff that appears to instruct the Plaintiff on how the $7,000 in payments were to be allocated. A motion for relief from the judgment based on new evidence is generally brought under Rule 60(b)(2), which provides for relief from a judgment or order when there has been "newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b)." The Defendant's counsel, however, has explicitly stated that he is not moving for relief under Rule 60(b)(2)[18] so the Court will considers his Motion under Rule 60(b)(1), as requested.

A party moving for relief under Rule 60(b)(1) cannot simply wait until after the trial and then seek relief from the judgment based on surprise. As the 10th Circuit has stated, "[t]he remedy for coping with surprise is not to seek a reversal after an unfavorable verdict, but a

---

[17] Servants of Paraclete v. Does, 204 F.3d 1005, 1009 (10th Cir. 2000).

[18] To succeed on such a motion, the movant must show that: (1) the evidence was newly discovered since the trial; (2) the moving party was diligent in discovering new evidence; (3) the newly discovered evidence could not be merely cumulative or impeaching; (4) the newly discovered evidence is material; and (5) that a new trial with the newly discovered evidence would probably produce a different result. Zurich N. Am. v. Matrix Serv. Inc., 426 F.3d 1281, 1290 (10th Cir. 2005) (internal citations omitted). Since it was the Defendant's counsel who created the letter in question, and it has been in his possession ever since, it would be difficult to see how the Defendant could successfully argue that this evidence is "newly discovered." This possibly explains why the Defendant has chosen instead to move for relief under Rule 60(b)(1).

request for a continuance at the time the surprise occurs."[19]  A similar approach is followed by other courts.  The 7th Circuit, for example, has said that "[a]bsent plain error, a party must object at trial in order to seek relief on the basis of surprise under Rule 60(b)."[20]

The Defendant claims that he was surprised at trial by the questioning regarding whether there was any indication of how the $7,000 in direct payments were to be allocated.  Specifically, the Defendant argues this was raised sua sponte by the Court with no prior warning that it would be an issue at trial.  In fact, the issue of the payments of $7,000 was first raised at trial by the Defendant's counsel who questioned the Plaintiff if she had received any other payments from the Defendant.  The Plaintiff responded that she had received checks from the Defendant, which she assumed were payments for the second mortgage.  The Plaintiff's counsel later asked the Plaintiff if the checks she had received from the Defendant indicated how they were to be allocated.  She testified that there was nothing on the checks that indicated an intended allocation.  The Court later asked the Defendant about why he paid the Plaintiff $7,000.  This questioning was prompted by the Plaintiff's testimony regarding these payments, which, as stated above, was in response to questioning from the Defendant's counsel.   The Plaintiff's counsel then asked the Defendant if the checks he sent to the Plaintiff indicated how the payments were to be allocated.  The Defendant, like the Plaintiff, testified that the checks gave no indication of this.  The only other questioning from the Court on this issue came late in the trial when the Court asked the Defendant's counsel why the Defendant made the payments.

---

[19]LeMaire v. United States, 826 F.2d 949, 953 (10th Cir. 1987).

[20]Walsh v. McCain Foods Ltd. 81 F.3d 722, 726 (7th Cir. 1996).

16

All of the Court's questioning on this issue at trial was related to *why* the Defendant made the payments. It was the Plaintiff's counsel who asked the questions about how the checks were to be allocated. At no point did the Defendant object to the questioning from the Plaintiff's counsel or suggest that he was surprised by the fact that this issue was raised at all. He also made no request for a continuance to present the evidence that he now claims supports his position. Additionally, when given the opportunity to clarify his client's position, Defendant's counsel chose not to cross-examine the Plaintiff or redirect questioning to the Defendant on this issue. Neither did the Defendant testify at any point that his counsel had sent a letter to the Plaintiff stating that the payments were to be allocated to the nondischargeable portion of the debt: a claim he now makes. Furthermore, it was Defendant's counsel that first raised the issue of these payments to the Plaintiff. It would, therefore, have been readily apparent that whether there was any indication of how the payments were to be allocated would also be an issue at trial. It is only now, after the Court has rendered a judgment unfavorable to the Defendant, that he claims he was surprised at trial by this line of questioning. This is not the proper remedy for a party claiming surprise under Rule 9024. Therefore, the Court finds no basis for the Defendant's claim that he should be granted relief under Rule 9024.

### IV.    CONCLUSION AND ORDER

For the reasons state above, the Defendant's Motion for Relief Under Rules 7052 and 9024 is hereby denied in part and granted in part. Due to the calculation adjustment discussed above, the total award to the Plaintiff should have been $42,542.60. This award is hereby decreased by $5,000 due to the Court's determination that the BAP appeal was unrelated to the nature of the mortgage obligation so an award of attorney's fees for this appeal was improper.

The total amount awarded to the Plaintiff as a nondischargeable judgment under 11 U.S.C. 523(a)(5) against the Defendant should be $37,542.60.[21]

Counsel for the Plaintiff is directed to prepare an appropriate Judgment for the Court's entry as required by Local Rule 9021-1.

_____End of Document_____

---

[21]As further clarification, the Court provides the following comparison between the calculations of the Court's original judgment, and that of this Memorandum Decision:

| Calculations Supporting the Original Judgment: | Calculations Supporting this Memorandum Decision: |
|---|---|
| Starting Point - payments until Daughter's 18th birthday ($19,769.68) | Starting Point - Amount by stipulation ($30,667.83) |
| - Chapter 13 payments From Third Case | - Chapter 13 payments From Third Case |
| + Defendant's Attorney Fees including BAP Appeal | + Defendant's Attorney Fees NOT including BAP Appeal |
| **Total Nondischargeable Judgment:** $42,542.60 (Per the Court's Adjustment on Pg. 8) | $37,542.60 |

Service of the foregoing **MEMORANDUM DECISION GRANTING IN PART AND DENYING IN PART DEBTOR'S MOTION FOR RELIEF FROM THE JUDGMENT UNDER RULES 7052 AND 9024** will be effected through the Bankruptcy Noticing Center to each party listed below.

Scott Mitchell
2469 East 7000 South, Suite 204
Salt Lake City, Utah 84121

Jay Busch
4007 South 5200 West
West Valley City, Utah 84120

Steven Tycksen
360 West 5300 South, Suite 360
Murray, Utah 84123